**MIEBACH et al., Coexrs.,**

**v.**

**MATHIAS et al.**

Court of Common Pleas of Ohio,
Licking County.

No. 97 CV 344.

Decided April 1, 1998.

*Richard M. Van Winkle* and *Anthony W. Stocco,* for plaintiffs.

*Mary Suzanne Mathias, pro se.*

*Dick M. Warburton, Jr.,* for defendant Ohio Casualty Group of Ins. Cos.

GREGORY L. FROST, Judge.

I

## NATURE OF THE PROCEEDINGS

This matter came before the court on plaintiffs' motion for partial summary judgment. Plaintiffs seek judgment on the issue of liability, arguing that defendant Mathias breached duties arising from her position as conservator for Irona B. Wessinger. After consideration of the pleadings, affidavits, appropriate exhibits, and memoranda, this court makes the following decision.

## II

## FACTS

This matter arose from a guardianship application filed in the probate division of this court by the children of Irona B. Wessinger to oversee Wessinger and her estate. After a hearing, the application was denied. However, a conservator was appointed to oversee Wessinger's financial matters. Upon agreement, defendant Mary Suzanne Mathias received the appointment. Mathias, was granted the limited powers to do the following: (1) take control of all bank deposits, (2) receive all income from all sources, and (3) pay all bills. These powers were included in the probate court's letters of conservatorship.

As conservator, Mathias was required to file with the probate court an annual accounting. As of May 1995, Mathias had failed to file an accounting, and Wessinger's children began to question Mathias's activity as conservator. Around this same time, Wessinger became ill, was hospitalized, and filed a motion to terminate the conservatorship. Pursuant to the motion, Mathias was dismissed as conservator and ordered to submit an accounting of her transactions spanning the life of the conservatorship. Wessinger subsequently passed away on November 19, 1997.

The final accounting submitted to the court indicates that Mathias steadily depleted the assets of Wessinger. Original balances plus income over the relevant time period totaled approximately $63,000, and Mathias's disbursements totaled over $61,000. Many of the disbursements were made for the benefit of Mathias and her family, as opposed to the care of Wessinger. However, the depletion of Wessinger's assets, in and of itself, is not presently at issue. Rather, the immediate issue is whether Wessinger consented to or authorized the expenses made for Mathias and her family. If so, a related issue for determination is whether Wessinger, as a ward of the conservatorship, *could* consent to or authorize disbursements under the conservatorship. The question of a ward's ability to authorize transactions in a conservatorship is one of first impression in Ohio.

After reviewing the relevant statutes and related case law, this court is convinced that the General Assembly intended a conservatorship to operate differently from a guardianship. Therefore, a genuine issue of material fact exists as to whether Wessinger requested or authorized Mathias to make disbursements for Mathias's use and benefit.

## III

## STANDARD OF REVIEW

The standard to be applied when construing a motion for summary judgment is set out in Civ.R. 56(C), which states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In applying this standard, a court must construe the evidence most strongly in favor of the nonmoving party, and must not grant judgment unless "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C).

Additionally, the Ohio Supreme Court has stated:

" '[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. * * * [T]he moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * * .' " *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1171, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. With this standard in mind, the court now turns to plaintiffs' motion for summary judgment.

With this standard in mind, the court now turns to plaintiffs' motion for summary judgment.

IV

CONCLUSIONS OF LAW

■ Plaintiffs' motion for partial summary judgment must be denied. R.C. 2111.021 establishes conservatorships in Ohio, and states:

"A competent adult who is physically infirm may petition the probate court of the county in which he resides, to place, for a definite or indefinite period of time, his person, any or all of his real or personal property, or both under a conservatorship with the court. *A petitioner either may grant specific powers to the conservator or court or may limit any powers granted by law to the conservator or court * * *. The petition shall state whether the person of the*

*competent adult will be placed under the conservatorship, shall state with particularity all real and personal property that will be placed under the conservatorship, shall state the powers granted and any limitations upon the powers of the conservator or court, and shall state the name of a proposed suitable conservator.*" (Emphasis added.)

The above language has been construed, to this court's knowledge, in only one published opinion in Ohio. In *In re Bolander* (1993), 88 Ohio App.3d 498, 624 N.E.2d 322, the appellant was a blind, competent adult. The trial court awarded a guardianship on appellant's behalf, and appellant sought to have the guardianship dismissed because she was not incompetent. The court of appeals agreed, and in its analysis made brief mention of conservatorships and R.C. 2111.021. In passing, the court stated that to establish a conservatorship, the ward must be a competent adult. Although this statement was of little consequence in the context of *Bolander*, the statement is relevant to the matter at bar.

In this case, plaintiffs argue that a conservatorship is virtually identical to a guardianship and therefore Wessinger had no ability to authorize any of the disbursements made by Mathias. Plaintiffs rely on the following language contained in R.C. 2111.021:

"Upon issuance of the order, all sections of the Revised Code governing a guardianship of the person, the estate, or both, whichever is involved, except those sections the application of which specifically is limited by the petitioner, and all rules and procedures governing such a guardianship, shall apply to the conservatorship, including, but not limited to, applicable bond and accounting requirements."

Plaintiffs contend that the above language requires a court to apply the statutes governing guardianships to conservatorships. In so doing, according to plaintiffs, the court must find as a matter of law that Mathias was in a fiduciary relationship with Wessinger, and owed Wessinger a specific duty not to use her assets for Mathias's personal or family use, despite the fact that Wessinger may have requested or authorized such expenditures. The court cannot agree with plaintiffs' characterization of the statute.

First, both sections of the statute quoted above and the court in *Bolander* specifically state that a ward of a conservatorship must be a competent adult. Second, and perhaps most obvious, if the legislature intended to have a conservatorship operate the same as a guardianship, then the legislature could have amended the code sections governing guardianships rather than create a section specifically for conservatorships. Although the above-quoted language states that the rules and procedures governing guardianships shall apply to conservatorships, the language also makes such application an exception to the ward's chosen limitations on the conservator's powers.

Further, the statute requires that the appointment and powers of a conservator be stated with particularity in the order creating the conservatorship. Unfortunately, in this case, the language leaves much to be interpreted. It is clear that Mathias was to handle all of Wessinger's financial transactions. However, whether or not Wessinger intended to preserve a right to make requests or authorize Mathias's activities is a mystery. In this situation, the court can only look to facts appropriately before the court and not in dispute. These facts are, first, that Wessinger was competent and, second, that as a matter of law the probate division of this court found a guardianship inappropriate. In light of Wessinger's competency and the probate court's findings, this court cannot unilaterally hold that the conservatorship stripped Wessinger, a fully competent adult, of all authority regarding her finances.

■ Thus, although the court finds that a conservator does stand in a fiduciary relationship with the ward of a conservatorship, the court is not persuaded that the obligations imposed on the conservator are the same as those imposed on guardians. Indeed, the language of R.C. 2111.021 anticipates that a physically infirm yet competent ward may have wants and desires regarding the specific obligations of an appointed conservator. The language therefore gives a ward the ability to grant specific powers, or limit the specific powers, given to a conservator. Given the competency of the ward, and the ward's ability to determine the powers of the conservator, this court finds, as a matter of law, that a ward may request or authorize specific transactions that fall under the conservatorship. This decision is consistent with the language and most apparent intent of the statute, which is to provide the physical means of making otherwise difficult transactions for a physically infirm, yet competent adult. To hold otherwise would render the statute indistinguishable from those code sections governing guardianships.

The court recognizes that by making this ruling there is a danger that conservatorships will be construed as agencies, defeating the purpose of creating a conservatorship. To this end, the court finds that the letters of a conservatorship may preclude such agency operation by including the specific rights and obligations of both the conservator and the ward. In the present case, the court cannot look to limitations placed on Wessinger because there are none. When weighing whether it is more sound to hold that Wessinger had no authority over her finances, despite being fully competent, against the danger of creating an agency out of the relationship in this particular case, the court finds the latter to be more equitable. In either instance, the question of agency is moot in the present case because the conservatorship was terminated.

■ In the end, plaintiffs' motion cannot be granted because when construing the facts most favorably to defendant Mathias, the court cannot conclude as a

matter of law that Wessinger did not authorize the disbursements. The record indicates that Mathias was asked to be the conservator for Wessinger because Mathias already cared for Wessinger and tended to her affairs. Further, although a number of the disbursements were speculative, if a jury believes Mathias, they may conclude that Wessinger was grateful for Mathias's assistance and honestly wished to provide for Mathias and her family. Such a determination is a genuine issue of material fact which must be decided by a jury.

## V

## CONCLUSION

Plaintiffs' motion for partial summary judgment is denied. Counsel for defendant shall prepare a judgment entry accordingly, present it to opposing counsel for approval, and submit it to the court within five days.

*Motion denied.*